AF Approval

Chief Approval

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:16-cr-296-T-23JSS

DANIEL KEITH O'BRIANT,
a/k/a "Keith"

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A.

Lee Bentley, III, United States Attorney for the Middle District of Florida, and the

defendant, Daniel Keith O'Briant, and the attorney for the defendant, John M.

Fitzgibbons, Esq., mutually agree as follows:

### A.     Particularized Terms

1.     Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

Information.  Count One charges the defendant with conspiracy to violate the

anti-kickback statute (or 42 U.S.C. § 1320a-7b(b)(2)), in violation of 18 U.S.C.

§ 371.

2.     Maximum Penalties

Count One carries a maximum sentence of five years

imprisonment, a fine of $250,000, a term of supervised release of not more than

three years, and a special assessment of $100, said special assessment to be

Defendant's Initials _DKO_

due on the date of sentencing.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:    That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the Information;

Second:    That the defendant, knowing the unlawful purpose of the plan, willfully joined in it;

Third:    That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the methods (or "overt acts") described in the Information; and

Fourth:    That such "overt act" was knowingly committed at or about the time alleged in an effort to carry out or accomplish some object of the conspiracy.

4.    Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

Defendant's Initials 

2

5.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

6.    <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any

Defendant's Initials                     3

federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot

Defendant's Initials DKO

4

and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

      7.    Cooperation - Responsibilities of Parties

      a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

      b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

      (1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

      (2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the

Defendant's Initials 

defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

Defendant's Initials DKO

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

8.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 982(a)(7), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following: a money judgment in the amount of $475,045.58 representing the amount of proceeds obtained as a result of the offense charged in Count One.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.  The defendant also hereby agrees that the

Defendant's Initials DKO

7

forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the amount of proceeds of the offense to which the defendant is pleading guilty is $475,045.58 and enter a preliminary order of forfeiture.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States.  These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and

Defendant's Initials 

8

return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials 

9

**B.**   **Standard Terms and Conditions**

      1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials 

10

2.    Supervised Release

The defendant understands that the offense(s) to which the
defendant is pleading provide(s) for imposition of a term of supervised release
upon release from imprisonment, and that, if the defendant should violate the
conditions of release, the defendant would be subject to a further term of
imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon
conviction, a defendant who is not a United States citizen may be removed from
the United States, denied citizenship, and denied admission to the United States
in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the
Court and the United States Probation Office all information concerning the
background, character, and conduct of the defendant, to provide relevant factual
information, including the totality of the defendant's criminal activities, if any, not
limited to the count(s) to which defendant pleads, to respond to comments made
by the defendant or defendant's counsel, and to correct any misstatements or
inaccuracies.  The United States further reserves its right to make any
recommendations it deems appropriate regarding the disposition of this case,
subject to any limitations set forth herein, if any.

Defendant's Initials                     11

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials DKO

12

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United



States Sentencing Guidelines, except (a) the ground that the sentence exceeds

the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant

to the United States Sentencing Guidelines; (b) the ground that the sentence

exceeds the statutory maximum penalty; or (c) the ground that the sentence

violates the Eighth Amendment to the Constitution; provided, however, that if the

government exercises its right to appeal the sentence imposed, as authorized by

18 U.S.C. § 3742(b), then the defendant is released from his waiver and may

appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of

the United States Attorney for the Middle District of Florida and cannot bind other

federal, state, or local prosecuting authorities, although this office will bring

defendant's cooperation, if any, to the attention of other prosecuting officers or

others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in</u>

<u>camera</u>, in whole or in part, upon a showing of good cause, and filed in this

cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon any

discussions between the attorney for the government and the defendant and

Defendant's Initials                     14

defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as

Defendant's Initials DKO

15

the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

   11. Factual Basis

     Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

     a. The Medicare program ("Medicare") was a federal "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that provided medical benefits, items and services (collectively "services") to beneficiaries age 65 and older with certain disabilities.

     b. Medicare included coverage under two primary components, hospital insurance (Part A) and medical insurance (Part B). Medicare Part A was a hospital insurance program that covered beneficiaries for, among other things, inpatient care in hospitals. Medicare Part B provided supplemental medical insurance to beneficiaries for, among other things, medically-necessary outpatient care and the application of skin grafts.

     c. The Centers for Medicare and Medicaid Services ("CMS"), an agency within the United States Department of Health and Human Services, oversaw and administered Medicare throughout the United States. CMS divided the United States in geographic regions and contracted with various companies

Defendant's Initials 

16

in those regions to assist in the administration of Medicare. These regional contractors were responsible for receiving, processing, and paying Medicare Part A and Medicare Part B claims that were submitted by their respective Medicare providers.

      d.     The Department of Veterans Affairs ("VA") is an executive level government agency that provides healthcare and benefits to veterans of the United States armed forces. The Veterans Healthcare Administration is a "federal health care benefit program" as defined by Title 18, United States Code Section 24(b) that provides medical benefits to veterans of the United States armed forces.

      e.     TRICARE was a triple option health care benefit plan of the United States Department of Defense Military Health System. Eligible TRICARE beneficiaries included members of all seven branches of the Uniformed Services: Army, Air Force, Navy, Marine Corps, National Oceanic Atmospheric Administration, Coast Guard, and the commissioned corps of the Public Health Service. TRICARE received federal funds allocated through the annual Department of Defense Appropriation Acts. A private corporation under contract with TRICARE acted as a "fiscal intermediary" and was authorized to receive and process claims on behalf of TRICARE. Health care service providers were reimbursed with federal funds for benefits and services provided to TRICARE beneficiaries.

Defendant's Initials DKO

17

f.      ABH (a company known to the defendant and the government), was a biopharmaceutical company founded in 2004 that developed and commercialized bioengineered tissue products and regenerative medicine therapies.  ABH was headquartered in Westport, CT, and had a large manufacturing plant and training facility in La Jolla, CA.  In the summer of 2011, ABH was acquired by another company, and operated as a wholly-owned subsidiary under the new name "SRM" (known to the defendant and the government) effective July 18, 2012.

g.      DG was a bioengineered skin substitute approved by the United States Federal Drug Administration for the treatment of diabetic foot ulcers.  ABH acquired the rights to DG in May 2006, and began selling DG to United States customers in February 2007.  In 2011, ABH had DG sales in the United States of approximately $195.6 million.

h.      The defendant, Daniel Keith O'Briant (usually called Keith), was hired by ABH near the end of 2006 as "Vice President, Sales."  The defendant's title was changed in 2009 to "Senior Vice President, North American Sales," and then again in 2012 to "Senior Vice President, Commercial Operations."  As the Senior Vice President, North American Sales, beginning in 2011 the defendant directly supervised approximately three National Sales Directors, who oversaw approximately thirteen Regional Sales Directors, who in-turn oversaw more than one hundred additional localized sales representatives throughout the country.

Defendant's Initials 

18

i.      On December 1, 2008, ABH was awarded a five year Federal Supply Schedule, contract number V797P-4155B, to provide DG to the VA at the cost of $1360.00 per unit.

j.      Each VA facility placed orders for DG against the Federal Supply Schedule contract based upon a physician and/or clinician's determination that the DG was the appropriate treatment protocol for the patient.

k.      The primary focus of ABH's Federal Markets Division was to market and promote DG at VA Facilities around the nation.  The defendant knew that VA facilities could purchase DG with very few internal restrictions.  In furtherance of the conspiracy, the defendant authorized the development of programs within the ABH Federal Markets Division to recruit VA physicians to give presentations to other VA clinicians on the use of DG.  The defendant, along with Todd Clawson and other ABH sales representatives, formed relationships with well-known VA podiatrists, and clinicians, with the intent to influence them, and use them to influence others at facilities to utilize DG in their treatment of veterans with diabetic foot ulcers.

l.      Multiple VA Podiatrists became key speakers for the Federal Markets Division. The defendant authorized speaking engagements and dinner lectures for these VA physicians at various locations throughout the United States.  These payments ranged from $300 to $3000 per event, depending on the agreement between the physician and ABH.  ABH developed a standard contract entitled "Consulting Services Agreement" for VA physician speakers.

Defendant's Initials 

19

The forms were processed at ABH.  However, if the sales representative requested that the physicians be paid above the maximum amount, the approval of the defendant was necessary. The defendant approved higher fees for VA physicians that were high volume DG users at the VA.  There was a significant correlation between the VA physicians and clinicians who were paid as ABH speakers, and the use of DG at their respective VA facilities.

m.   The Federal Markets Divisions was authorized to give at least two informal "educational" dinner meetings per week.  These dinner meetings targeted VA physicians and clinicians, with the intent to increase the use of DG at VA facilities. Many of these dinners were held at expensive restaurants that cost more than the authorized amount.  Each Federal Market Sales representative had a significant monthly expense to cover these expenses.  The defendant knew that the VA rules and regulations prohibited federal employees from receiving more than $50.00 per year from prohibited sources in gifts, meals, and entertainment.  ABH was a prohibited source because it was selling its products to and through VA clinicians and physicians. The defendant approved the expensive dinners submitted by Todd Clawson.  The defendant also advised Clawson that he and his sales force could continue to provide these dinners to VA providers despite of his knowledge that for VA employees the cost of dinners were higher than the rules authorized by the VA.

n.   The defendant also approved and attended expensive V.I.P. dinners that were held annually at the Dessert Foot Conference for VA providers.

Defendant's Initials                     20

o.     A medical algorithm is a system designed to improve and standardize decisions made in the delivery of medical care.  An algorithm is a set of criteria designed to indicate when a medicine, treatment, or other medical application should be given.  Medical algorithms assist in standard selection and application of treatment regimes.  The defendant and Todd Clawson recognized that the VA lacked an algorithm for the treatment of diabetic foot ulcers.  Therefore, the defendant and Clawson worked with CLV, a VA podiatrist to create an algorithm that would include the use of living skin products in an effort to increase DG sales at VA facilities.  After the defendant, Clawson, and CLV created the algorithm, CLV became a valuable proponent of DG, and became an even more active speaker for ABH.  After the publication of the algorithm, CLV began receiving as much as $2500.00 per speaking engagement from ABH.

p.     During his period of employment, the defendant, together with others including Nick Rallo, Tony Ezell, Todd Clawson (all three of whom were senior ABH managers), and members of the ABH sales force, did knowingly and willfully conspire to and did offer and pay physicians and the physicians' staff kickbacks of cash equivalents and other in-kind inducements (collectively "gratuities") to order, purchase, and use DG on Medicare, Veterans Affairs and TRICARE beneficiaries.  In furtherance of the conspiracy, the defendant and others either approved, arranged, or provided for lavish getaways to physicians, including fishing trips and a bachelor party in Las Vegas, concert tickets, tickets to sporting events, items of value (e.g., shotgun, shells), and other in-kind and

Defendant's Initials 

21

cash equivalent inducements. Bogus receipts and false reporting information were used with the defendant's knowledge to conceal (in the books and records of ABH and from others) the true nature of their expenditures. Some of these bogus receipts were created with an electronic word processing template, commonly known within ABH as the "Receipt Maker" or the "Magic Wand."

  q.  While employed by ABH and SRM, the defendant engaged in multiple acts in furtherance of the charged conspiracy, including:

    1.  in or about August 2009, following an ABH compliance presentation in the Middle District of Florida that, among other things, emphasized that the need to comply with the anti-kickback laws, the defendant instructed Tony Ezell, Nick Rallo, and others to continue providing inducement and kickbacks to physicians in order to promote or reinforce sales.

    2.  in or about August 2009, Tony Ezell created a simple Word file which looked like a valid receipt (the Receipt Maker or Magic Wand) that could be easily edited to create bogus receipts that appeared legitimate. This file was shared amongst conspirators in the company.

    3.  on or about September 10th through the 12th, 2009, ABH officials held a bachelor party in Las Vegas for one of the top billing physicians in the United States. The defendant attended part of the trip.

    4.  on or about September 11, 2009, money was spent to pay for the doctor's bachelor party. A fake receipt was created to mask how $2,576.64 was being spent. This fake receipt was submitted to ABH for payment

Defendant's Initials    22

and approved by the defendant, who knew that the receipt was, in truth and fact, faked to mask how the money was really being spent.

5.    on or about September 12, 2009, $2,820.43 was spent at Tryst Nightclub in Las Vegas as part of the doctor's bachelor party. The description of this expense in ABH's books and records was falsified as a "Standard of Care Presentation at the ABDO Wound Conference." The defendant knew this description was false because he knew, in truth and fact, that the false description masked how the money was really being spent. The defendant approved the receipt.

6.    on or about September 4, 2010, a high-referring VA doctor attended a KISS concert with two guests, said concert tickets costing $628.65 and paid for by ABH. The expense was submitted to the defendant for approval by Todd Clawson. The defendant approved it for payment.

7.    on or about August 11th through the 14th, 2011, a group of high-referring VA doctors were taken to the Snake River Lodge & Spa in Jackson Hole, WY, for a luxury getaway fishing trip. The cost of the lodging and accommodations was $6,476.28 and ABH paid for the trip. Clawson submitted the $6,476.28 to the defendant for payment in June 2011 and the defendant approved the expense.

Defendant's Initials 

23

8.      on or about August 26, 2011, a high-referring VA doctor attended a Def Leppard concert with three guests, said concert tickets costing $1,012.55 and paid for by ABH. The expense was submitted to the defendant for approval by Todd Clawson. The defendant approved it for payment.

r.      Although the defendant does not necessarily have an individual, specific recollection of each of the expenses he approved, he knew many of the expenses he was approving were kickbacks.

s.      The average of the defendant's bonuses for 2010 and 2011 was $475,045.58, which the defendant agrees is a fair and appropriate measure of the proceeds of this offense.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials                 24

13.   Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this ___28ᵗʰ___ day of ___June_____, 2016.

A. LEE BENTLEY, III
United States Attorney

_____                    _____
Daniel Keith O'Briant                          Jay G. Trezevant
Defendant                                      Assistant United States Attorney

_____                    _____
John M. Fitzgibbons, Esquire                   Thomas N. Palermo
Attorney for Defendant                         Assistant United States Attorney

                                               _____
                                               Robert A. Mosakowski
                                               Assistant United States Attorney
                                               Chief, Economic Crimes Section