UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:16-cr-296-T-23JSS

DANIEL KEITH O'BRIANT

**THE UNITED STATES OF AMERICA'S MOTION AND
INCORPORATED MEMORANDUM IN SUPPORT OF A
DOWNWARD DEPARTURE OF DEFENDANT'S
SENTENCE BASED UPON SUBSTANTIAL ASSISTANCE**

Pursuant to the provisions of Section 5K1.1 of the United States

Sentencing Guidelines, Title 18, United States Code, Section 3553(e), and in

the interests of justice, the United States respectfully moves this Court to grant

a four-level reduction in the defendant's offense level.

## MEMORANDUM IN SUPPORT

### I.  Background

A.    The Government Health Care Programs

The Medicare program ("Medicare") is a federal "health

care benefit program," as defined by Title 18, United States Code, Section

24(b), that provides medical benefits, items and services (collectively

"services") to beneficiaries age 65 and older with certain disabilities. Medicare

includes coverage under two primary components, hospital insurance (Part A)

and medical insurance (Part B). Medicare Part A is a hospital insurance

program that covers beneficiaries for, among other things, inpatient care in hospitals. Medicare Part B provides supplemental medical insurance to beneficiaries for, among other things, medically necessary outpatient care and the application of skin grafts.

The Centers for Medicare and Medicaid Services ("CMS"), an agency within the United States Department of Health and Human Services, oversees and administers Medicare throughout the United States. CMS divides the United States in geographic regions and contracts with various companies in those regions to assist in the administration of Medicare. These regional contractors are responsible for receiving, processing, and paying Medicare Part A and Medicare Part B claims submitted by their respective Medicare providers.

TRICARE is a triple option health care benefit plan of the United States Department of Defense Military Health System. Eligible TRICARE beneficiaries include members of all seven branches of the Uniformed Services: Army, Air Force, Navy, Marine Corps, National Oceanic Atmospheric Administration, Coast Guard, and the commissioned corps of the Public Health Service. TRICARE receives federal funds allocated through the annual Department of Defense Appropriation Acts. A private corporation under contract with TRICARE acts as a "fiscal intermediary" and is

2

authorized to receive and process claims on behalf of TRICARE. Health care service providers are reimbursed with federal funds for benefits and services provided to TRICARE beneficiaries.

B.    Advanced BioHealing, Inc.

Advanced BioHealing, Inc. ("ABH"), was a biopharmaceutical company founded in 2004 that developed and commercialized bioengineered tissue products and regenerative medicine therapies. ABH was headquartered in Westport, CT, and operated a manufacturing plant and training facility in La Jolla, CA. In May 2006, ABH acquired the rights to Dermagraft and began selling the product to United States customers the next year. Dermagraft was a bioengineered skin substitute approved by the United States Federal Drug Administration for the treatment of diabetic foot ulcers. In 2011, Dermagraft sales in the United States approximated $195.6 million. Effective July 18, 2012, ABH was acquired by Shire PLC, a United Kingdom specialty biopharmaceuticals group, and operated as a wholly owned subsidiary under the new name Shire Regenerative Medicine, Inc. ("SRM").

## II.    The ABH Sales Executives

The defendant, Daniel Keith O'Briant ("O'Briant"), was hired by ABH near the end of 2006 as "Vice President, Sales." The defendant's title was changed in 2009 to "Senior Vice President, North American Sales." As the

Senior Vice President, O'Briant directly supervised three National Sales Directors: Charles "Tony" Ezell (National Sales Director for the Western United States), Nicolo Rallo (National Sales Director for the Eastern United States), and Todd Clawson (National Director of the Federal Markets[1] Division). The National Sales Directors supervised approximately thirteen Regional Sales Directors, who in-turn oversaw more than one hundred additional sales representatives throughout the country.

### III.    *U.S. ex rel. Vinca and Sweeney v. Advanced BioHealing*

In January 2011, relators Brian Vinca and Jennifer Staup Sweeney filed a *qui tam* action styled *United States of America ex rel. Vinca and Sweeney v. Advanced BioHealing, Inc.*, Case No. 8:11-cv-179-T-30MAP (the "Vinca Case").[2] The relators alleged, in part, that the ABH sales force routinely and as a course of conduct illegally offered and provided numerous types of remuneration to physicians in return for the physicians' purchase and use of ABH's Dermagraft product, in direct violation of 42 U.S.C. § 1320a-7b (the "anti-kickback statute").

---

[1] Clawson was primarily responsible for overseeing the ABH sales team's efforts in the Veterans Health Administration ("VHA").

[2] The Vinca Case complaint has been amended. In addition, other related *qui tam* actions were filed in various federal districts after the Vinca Case complaint.

4

Upon reviewing the allegations in the Vinca Case complaint, the government commenced a parallel civil and criminal investigation. The criminal prong of that investigation quickly netted Dr. Nimesh Patel who entered into a plea agreement with the government in February 2012 (Case No. 8:13-cr-30-T-35MAP). Pursuant to the terms of that plea agreement, Dr. Patel agreed to plead guilty to violating the anti-kickback statute—for his illegal solicitation and receipt of remuneration from ABH in exchange for his purchase and use of Dermagraft—and to provide substantial assistance to the government's ongoing criminal investigation. As part of his substantial assistance, Dr. Patel participated in multiple consensually recorded meetings with one or more ABH sales force member(s).

The government's criminal investigation ultimately established that a significant majority of the ABH sales force members across the United States had—as alleged in the Vinca Case—participated in a conspiracy to illegally market and sell Dermagraft (including within the VHA). More specifically, O'Briant, the Senior Vice President responsible for ABH's Dermagraft sales, together with his National Sales Directors—Ezell, Rallo, and Clawson— orchestrated a conspiracy in which the ABH sales force offered and paid physicians and the physicians' staff kickbacks of cash equivalents and other in-

5

kind inducements (collectively "gratuities") to order, purchase, and use Dermagraft on Medicare, Veterans Affairs, and TRICARE beneficiaries.

In that regard, O'Briant and those under his direct and indirect supervision approved, arranged, and/or provided for lavish gratuities to be showered upon physicians including fishing trips, a Las Vegas bachelor party excursion, concert and sporting-event tickets, personal items of value (*e.g.*, a shotgun, shells, gift cards), and other in-kind and cash equivalent inducements. To conceal the illegal kickbacks from the public and from others within ABH, O'Briant and his sales teams utilized bogus receipts and false reporting information. Some of the bogus receipts were created with an electronic word processing template shared amongst the conspirators, which was commonly referred to within ABH as the "Receipt Maker" or the "Magic Wand."

## IV.    The Defendant's Substantial Assistance

O'Briant pleaded guilty[3] for his supervisory role in the illegal kickback conspiracy on July 15, 2016.[4] Docs. 3, 7, and 8. That same day, O'Briant

---

[3] The underlying investigation leading to O'Briant's guilty plea did not produce or reveal any evidence suggesting that the physicians who purchased Dermagraft from the ABH sales force engaged in any medically unnecessary services or utilized the Dermagraft in a manner that caused any patient harm or injury.

[4] Ezell and Rallo entered into plea agreements with the United States (Middle District of Florida) in July 2014. Both defendants are still cooperating in the investigation and awaiting their sentencing hearings (June 2017) before U.S. District Court Judge Richard A. Lazzara.

participated in a lengthy interview at the Tampa U.S. Attorney's Office that included Special Agents from the FBI, HHS-OIG, and DCIS, concerning O'Briant's role in the illegal kickback conspiracy at issue.

O'Briant also voluntarily participated in lengthy follow-up interviews at the Tampa U.S. Attorney's Office on September 28, 2016 and October 17-18, 2016.[5] When O'Briant was outside the Middle District of Florida, O'Briant's counsel actively supported O'Briant's substantial assistance by contacting O'Briant and supplementing his information and relaying same to the government's investigative team whenever requested. It was notably apparent to the federal agents and attorneys who participated in O'Briant's multiple interviews that O'Briant was diligent and fully forthcoming in his responses to the investigative team and that he was (and remains) remorseful for his role in the illegal conduct.

Based upon the information provided by O'Briant—and Ezell, Rallo, Clawson, and other witnesses—the United States (and various participating states) reached a significant, breakthrough settlement agreement in principal in January 2017 with Shire PLC. That agreement requires, in part, Shire PLC to

---

Clawson entered into a plea agreement with the government in the Western District of Washington. He is also still cooperating and awaiting a sentencing hearing.

[5] O'Briant also voluntarily met with Special Agents with the HHS-OIG and DCIS in March 2014, prior to entering into a plea agreement with the government.

remit $350 million to the United States to settle federal and state False Claims Act allegations.[6] O'Briant continues to cooperate and to provide substantial assistance to the government.

## **CONCLUSION**

Wherefore, based upon the foregoing and pursuant to the USSG § 5K1.1, and in the interests of justice, the United States respectfully moves this Court to grant a four-level reduction in the defendant's total offense level.

Respectfully submitted,

W. STEPHEN MULDROW
Acting United States Attorney

By: *s/ Thomas N. Palermo*
Thomas N. Palermo
Assistant United States Attorney
Florida Bar No. 530034
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail:   thomas.palermo@usdoj.gov

---

[6] The primary allegation underlying the civil settlement was that Shire PLC and the company it acquired in 2011, ABH, employed kickbacks and other unlawful methods to induce clinics and physicians to utilize Dermagraft for government health program patients.

8

_s/ Jay G. Trezevant_
Jay G. Trezevant
Assistant United States Attorney
Florida Bar No. 802093
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail:   jay.trezevant@usdoj.gov

9

**U.S. v. O'BRIANT**                    **Case No. 8:16-cr-296-T-23JSS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

John Fitzgibbons, Esquire


*s/ Thomas N. Palermo*
Thomas N. Palermo
Assistant United States Attorney